No CV 30



FILED

CLERK, U.S. DISTRICT COURT

03/06/2025

CENTRAL DISTRICT OF CALIFORNIA

BY _____GSA_____ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

n/s

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR COPYRIGHT INFRINGEMENT, WIRE FRAUD, AND FRAUDULENT CONCEALMENT**

Emergency Hearing for Permanent Injunction on NDA

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE  CENTRAL DISTRICT OF CALIFORNIA**

47th and 7th, LLC,
222 Valley Road,
Wilmington, DE 19804,

And,

Paramount Global,
235 E 45th St,
New York, NY 10017,

Plaintiffs,
v.
Chris Bruce,  King Creative LLC
28 Kiamensi Rd.
Wilmington, Delaware 19806

And,

Why Fly Internet,  Mark Thompson
218 West 9th St,
Wilmington,  Delaware 19801

Defendants, Jointly and Severally.

**Case No.:** [To be Assigned]    **2:25-cv-02059-UA**

JURY DEMAND ENDORSED HEREIN

## I. INTRODUCTION

In a world where trust and integrity form the bedrock of creative collaborations, my client stood as a beacon of rightful conduct, engaging in a clear and lawful agreement to produce a sound recording for the esteemed project "Forever I Love America." Unfortunately, this trust was blatantly disregarded by the defendants, who not only breached a non-disclosure agreement but also engaged in unauthorized streaming and use of illegal wireless technology for personal gain. This misconduct was not an isolated incident but a calculated move, despite clear contractual terms and prior understandings meant to prevent such actions. The defendants' repeated disregard for legal and ethical boundaries not only undermines the sanctity of contractual agreements but also inflicts significant harm on my client, warranting swift and decisive judicial intervention to rectify these wrongs.

## II. JURISDICTION

**Subject Matter Jurisdiction**: This Court has subject matter jurisdiction over the claims presented in this complaint pursuant to the involvement of multiple state jurisdictions including Pennsylvania, Delaware, California, and New York, which are all implicated in the underlying facts and transactions of this case. The complexity and multi-state nature of the legal and factual issues herein invoke the jurisdiction of federal courts under 28 U.S.C. § 1332, as this case involves citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

**Personal Jurisdiction**: This Court has personal jurisdiction over the parties involved in this matter as the defendants have substantial and not isolated activities within the states of Pennsylvania, Delaware, California, and New York, either directly or through a joint task force, thereby availing themselves to the jurisdiction of this Court. The claims arise out of and are connected with such activities that have a substantial enough connection to the forum states, thus satisfying the requisite minimum contacts for personal jurisdiction consistent with the principles of due process.

## III. PARTIES

**Plaintiff(s):**

a. Danny Amen Valentine Shabazz
1027 west 7th St. Chester,  PA 19013
b. Paramount Global 235 E 45th St,

New York, NY 10017,


**Defendant(s):**

  a. Christopher Bruce King Creative LLC
28 Kiamensi Rd
Wilmington,  Delaware 19806

  b. Mark Thompson Why Fly Internet
218 West 9th St. Wilmington Delaware 19801

## IV. GENERAL ALLEGATIONS

1. On August 29, 2019, Chris Bruce entered into a legally binding Recording Artist-Producer Agreement ("Agreement") with 47th and 7th, LLC, a Delaware limited liability company, for the production of a sound recording for the musical composition entitled "Forever I Love America" ("Composition"), written by Danny A. Shabazz.

2. Under the terms of the Agreement, Chris Bruce was engaged to perform, arrange, record, engineer, produce, and mix a master sound recording ("Sound Recording") of the Composition, which was intended for possible inclusion in the soundtrack of the audio-visual production also entitled "Forever I Love America" ("Program").

3. The Agreement stipulated that Chris Bruce was to deliver a completed Sound Recording by August 29, 2019, in a format specified as a master recording.

4. The Agreement explicitly stated that the sound recording master produced by Chris Bruce, from the inception of the recording thereof, and all reproductions made therefrom, together with the performances embodied therein and all copyrights therein and thereto, and all renewals and extensions thereof, would be the property of 47th and 7th, LLC, free of any claims by any other person, firm, or corporation.

5. It was further stipulated that Chris Bruce would be paid a sum of $50.00, and in the event of distribution or sale of the Sound Recording and production, he would receive fifty percent (50%) of the net receipts received by 47th and 7th, LLC.

6.  The Agreement contained a clause that all rights of every kind and nature in and to the results and proceeds of Chris Bruce's services and performances rendered under the Agreement would be deemed a "work-made-for-hire" as defined in the U.S. Copyright Act of 1976.

7.  Chris Bruce was granted usual and customary credit in the closing credits of the Program and, if applicable, on liner notes, CDs, and album covers of records embodying the Sound Recording.

8.  The Agreement was governed by the laws of the State of Delaware and Pennsylvania, with exclusive jurisdiction vested in the state and federal courts of these states.

9.  Subsequent to the execution of the Agreement, Chris Bruce breached the Agreement by engaging in unauthorized activities involving the Sound Recording.

10. Specifically, Chris Bruce entered into an illegal streaming and internet deal with Why Fly Internet, a third party, for financial gain and illegal wireless technology usage on communications related to the Sound Recording.

11. This unauthorized deal involved the activation of equipment and distribution of the Sound Recording via Why Fly Internet, which was never agreed upon by 47th and 7th, LLC, as evidenced by the document titled "Love America Artist Rec K (1).rtf.pdf," created on March 3, 2025, and last processed on the same date.

12. The aforementioned document, bearing document ID 05db82ed-72a3-4085-a236-0b10d7c4aeea, clearly states that 47th and 7th, LLC never agreed to allow Why Fly Internet and King Creative LLC to activate equipment or distribute the Sound Recording.

13. The actions of Chris Bruce constitute a breach of the non-disclosure provisions of the Agreement and have resulted in criminal copyright infringement and wire fraud, as he disclosed and utilized proprietary and copyrighted material for unauthorized purposes.

14. The unauthorized actions of Chris Bruce have caused significant financial and reputational damage to 47th and 7th, LLC, and have undermined the exclusive rights granted under the Agreement.

15. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

## V. CAUSES OF ACTION

### COUNT ONE - WIRE FRAUD

1. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

2. The defendant knowingly devised or intended to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.

3. In support of the foregoing, defendant Chris Bruce engaged in unauthorized streaming and internet deals through Why Fly Internet, leveraging illegal wireless technology for communications related to the "Forever I Love America" documentary series, thereby violating explicit contractual terms that restricted such actions and sought to protect the proprietary content.

4. The defendant transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

5. Specifically, Chris Bruce utilized electronic communications, including the internet and potentially other digital transmission methods, to facilitate the illegal streaming deal with Why Fly Internet, which involved the interstate transmission of copyrighted sound recordings and data from the documentary series.

6. The actions of the defendant were intentional, aimed at personal financial gain at the expense of the plaintiff and other rightful parties, demonstrating a clear intent to defraud.

7. As a result of these actions, the plaintiff suffered damages, including but not limited to, loss of control over proprietary content, loss of potential revenue, and harm to the reputation of the involved parties and productions.

8. The scheme and the use of electronic communications are evidenced by the contractual documents provided, showing the terms of engagement between Chris Bruce and the plaintiff, and further supported by the unauthorized activation of

equipment and services as detailed in the "Love America Artist Rec K (1).rtf.pdf" document.

9. The defendant's actions fall squarely within the purview of wire fraud statutes as applicable in the jurisdictions of Pennsylvania, Delaware, California, and New York, where the fraudulent activities impacted the plaintiff's business operations and the dissemination of copyrighted material.

## COUNT TWO - CRIMINAL COPYRIGHT INFRINGEMENT

1. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

2. Under the relevant statutes governing criminal copyright infringement, including but not limited to 17 U.S.C. § 506(a), a defendant commits an offense if they willfully infringe copyrights for the purpose of commercial advantage or private financial gain.

3. Defendant Chris Bruce was contractually engaged to render musical services for the production of a sound recording for the documentary series "Forever I Love America," as evidenced by the agreement dated August 29, 2019, which explicitly states that all resulting sound recordings and copyrights therein would be the property of the Plaintiff.

4. In violation of this agreement, Defendant 4. Bruce engaged in unauthorized acts by entering into an illegal streaming and internet deal with Why Fly Internet, thereby distributing the copyrighted sound recording without the consent of the Plaintiff and for financial gain.

5. The unauthorized distribution by Defendant Bruce was facilitated through the use of illegal wireless technology to transmit the copyrighted content, further demonstrating the willful nature of the infringement.

6. The actions of Defendant Bruce have caused significant financial and reputational damage to the Plaintiff, as the unauthorized distribution and commercial exploitation of the copyrighted sound recording have diminished its exclusive value and breached the trust of the contractual relationship.

7. The documentation, specifically the contract dated August 29, 2019, and the consolidated text from the document processing, clearly delineates the exclusive

rights granted to the Plaintiff and the restrictions imposed on Defendant Bruce, establishing the basis for the claim of willful infringement for financial gain.

8. The jurisdiction for this claim is properly vested in the courts of Pennsylvania and Delaware, as well as California and New York, where the infringements have taken effect and where the Defendant has conducted business activities related to the infringement.

## VI. DEMAND

WHEREFORE, Plaintiff respectfully prays this Court:

A. Grant judgment in favor of Plaintiff on all claims and for the remedies sought in each claim;

B. Issue a judicial determination of the rights, duties, and obligations of the parties hereto;

C. Order the immediate removal of Defendant's equipment from Plaintiff's property, as no rights of entry agreement exists under the lease and such presence is based on fraudulent concealment;

D. Enjoin Defendant from continuing operations at both locations involved in this matter, effectively shutting down all services to prevent further infringement and fraudulent activities;

E. Award Plaintiff actual damages in an amount to be determined at trial, but in no event less than $10,000,000, reflecting the severe economic impact and egregious nature of Defendant's actions;

F. Grant Plaintiff the maximum economic, non-economic, actual, statutory (pursuant to relevant sections of copyright and wire fraud statutes), emotional, general, special, punitive, and other damages available under the law;

G. Award Plaintiff attorney fees, calculated with the appropriate multiplier, plus all costs and expenses of litigation, as the complexity and significance of this case have necessitated substantial legal services;

H. Direct law enforcement to arrest and detain individuals responsible for the criminal acts of wire fraud and copyright infringement as detailed in the complaint, ensuring accountability and deterrence of future violations;

I. Award Plaintiff such other and further relief as the Court deems just and appropriate under the circumstances.

JURY DEMAND:
HEREBY DEMAND A JURY ON ALL TRIABLE MATTERS.

Respectfully Submitted,

Danny Amen Shabazz pka Danny Ace Valentine
3/3/2025

Kobe Bryant
Copyright


Type of Work:  Text

Registration Number / Date:   TX0009256156 / 2022-09-27

Application Title:       Kobe Bryant.

Title:    Kobe Bryant.

Description:    Electronic Deposit.

Copyright Claimant:    Danny Amen Valentine Shabazz, 1978- . Address: 65 Irby Ave, Atlanta, Georgia, 30305, United States.

Date of Creation:       1995

Date of Publication:    1995-11-01

Nation of First Publication:    United States

Authorship on Application:      Danny Amen Valentine Shabazz, 1978- ; Citizenship: United States. Authorship: text.

Rights and Permissions:       Danny Amen Valentine Shabazz, Crates Inc. , Forever I love America Inc, DVC, 65 Irby Ave, Atlanta, Georgia, 30305, United States, (470) 836-6336, (470) 836-6336, danny@foreveriloveamerica.com

Copyright Note:         C.O. correspondence.

Names:         Valentine Shabazz, Danny Amen, 1978

**RECIPIENT, BY**

Signature

Date: 8/31/, 2017

Name/Title _Christopher Bruce_    _Owner / Bruce Productions_

-3-

each such Representative must agree to comply with and be bound by the terms of this Agreement and that RECIPIENT shall be liable for the acts of its Representatives and any and all other persons to whom it discloses the Confidential Information.

4.         RECIPIENT acknowledges and agrees that a breach of any of the terms of this Agreement may result in irreparable injury and damage to VALENTINE that will not be adequately compensable in money damages and for which VALENTINE will have no adequate remedy at law. RECIPIENT consents and agrees that VALENTINE may obtain injunctions, orders, or decrees as may be necessary to protect the Confidential Information.

5.         This Agreement does not constitute a commitment or an obligation on the part of either Party to enter into any other binding contractual agreement or provide any information to the other Party.

6.         Upon the request of VALENTINE, or upon termination of the discussions contemplated by the Parties herein, RECIPIENT shall immediately return or destroy all tangible expressions of Confidential Information, including without limitation, all forms thereof set forth in paragraph 1 of this Agreement.

7.         The Parties acknowledge that all Confidential Information shall at all times remain the property of VALENTINE and that nothing in this Agreement shall be construed as granting any rights under any copyrights, trademarks, trade secrets, know-how, patents, patent applications, or other intellectual property rights in the possession of either Party, now or in the future.

8.         This Agreement shall remain in force for five (5) years from the Effective Date of this Agreement unless earlier terminated by the mutual written consent of the Parties. Any termination of this Agreement shall be without prejudice to the rights and obligations of the Parties hereunder which have accrued on or before the date of termination.

9.         If any term, covenant, or restriction of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, it is the Parties' intention that such term, covenant, or restriction be reformed to the extent permissible by law and the remainder of the terms, covenants and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

10.        This Agreement is personal to the Parties, and shall not be assignable by either Party, voluntarily or by operation of law or otherwise, without the prior written consent of the non-assigning Party, except to a successor to substantially the entire business of the assigning Party that relates to the Permitted Purpose. The terms, covenants and restrictions of this Agreement shall be binding upon, inure to the benefit of and be enforceable by any and all permitted successors and assigns of the Parties.

11.        This Agreement shall be construed in accordance with the laws of the State of California without regard to its conflicts of laws principles. The parties hereby submit to the exclusive jurisdiction of, and waive any venue objections against, the Federal and State courts of the State of Delaware

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed by their respective duly authorized officers as of the Effective Date written above.

THE DANNY VALENTINE CORPORATION BY

Signature _____  Date: _____8 / 31/_____, 2017

Name/Title _____Danny Valentines Chairman_____

-2-

## NON-DISCLOSURE AGREEMENT

This Non-Disclosure Agreement (herei

nafter the "Agreement") is made

on this 31___day of August, 2017 (the "Effective Date")

by and between DANNYA.VALENTINE (hereinafter referred to as "VALENTINE"), Christopher Bruce _____ (hereinafter referred to as "RECIPIENT") (hereinafter referred to collectively as the "PARTIES").

**WHEREAS,** VALENTINE is and/or has been engaged in the business of conceiving, designing,producing,curating, and/or developing tours, factories and networks. _____, and has developed certain proprietary and confidential information related thereto;

**WHEREAS,** RECIPIENT is and/or has been engaged in the business of production. _____;

**WHEREAS,** VALENTINE and RECIPIENT mutually desire to commence discussions for the purpose of exploring the possibility of entering into a future business relationship relating to their respective businesses (the "Permitted Purpose");

**WHEREAS**, VALENTINE may find it necessary or convenient to disclose certain information, which is of a proprietary or confidential nature solely for the above stated Permitted Purpose to RECIPIENT or the principals, partners, shareholders, directors, officers, employees, representatives, professional advisors or agents of RECIPIENT (collectively the "Representatives"); and

**WHEREAS**, VALENTINE would not otherwise make such disclosures absent the covenants and other terms contained herein and RECIPIENT desires VALENTINE to makes such disclosures;

**NOW, THEREFORE**, in consideration of the premises and promises and covenants contained herein, and intending to be legally bound, the Parties, in order to adequately safeguard the disclosed "Confidential Information", agree as follows:

1.	As used herein "Confidential Information" shall include, but shall not be limited to, any and all designs, patterns, descriptions, prototypes, illustrations,music, graphic material, samples, physical specimens, products, processes, specifications, techniques, plans, inventions, information, business plans, know-how, technical and non-technical data, all written forms, documents, notes, disks or other storage media upon which the Confidential Information is embodied in whole or in part and other proprietary information which relates to VALENTINE's creations, designs, products, and/or business and which is disclosed to RECIPIENT by or on behalf of VALENTINE.  Confidential Information may be disclosed in any form by to the RECIPIENT including, but not limited to, oral or written form, graphic material, designs, illustrations, samples, prototypes, or other physical specimens.

2.	RECIPIENT shall maintain the Confidential Information in confidence using such measures as it affords its own information of a similar nature and, in any event, shall exercise at least commercially reasonable care in protecting the Confidential Information.  RECIPIENT further agrees that Confidential Information shall be used solely for the Permitted Purpose and, except for such limited Permitted Purpose, shall not be copied, or used for its own benefit or the benefit of any third party in any way including but not limited to any commercial use or disclosure.  RECIPIENT agrees that the Confidential Information shall not be disclosed to any third party without the prior written consent of VALENTINE, except that RECIPIENT may, without breaching this section, discuss such Confidential Information with its attorneys, accountants, or financial advisors, subject to the terms and conditions of this Agreement.

3.	Notwithstanding the foregoing, RECIPIENT may disclose the Confidential Information only to its Representatives who have a need to know of it solely for the Permitted Purpose, provided that